IN THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **CALYNN REFUGE,** | § § | |
|    **Plaintiff,** | § § | |
| | § | **Case No.:** |
| vs. | § § | |
| **WELLS FARGO BANK NATIONAL ASSOCIATION &** | § § | **TRIAL BY JURY DEMANDED** |
| **WELLS FARGO BANK TEXAS NATIONAL ASSOCIATION &** | § § | |
| **WELLS FARGO BANK (TEXAS) N A &** | § | |
| **WELLS FARGO & COMPANY** | § § | |
|    **Defendants.** | § | |

---

**ORIGINAL COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF**

---

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

CALYNN REFUGE, (hereinafter "Plaintiff"), complains of WELLS FARGO BANK NATIONAL ASSOCIATION, WELLS FARGO BANK TEXAS NATIONAL ASSOCIATION, WELLS FARGO BANK (TEXAS) N A, and WELLS FARGO & COMPANY (hereinafter "Defendants") and for cause of action would show the Court as follows:

**INTRODUCTION**

1. Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2. Plaintiff files this Complaint and complains about race discrimination and retaliation under Title VII of Civil Rights Act of 1964, as amended.

3. Plaintiff files this Complaint and complains about race discrimination under 42 USC §1981, as amended.

4. Plaintiff files this Complaint and complains of intentional infliction of emotional distress.

5. This action seeks compensatory and punitive damages, liquidated damages, plus lost wages (past, present, and future), attorney's fees, taxable court costs, pre-judgment and post-judgment interest.

## PARTIES

6. Plaintiff, CALYNN REFUGE, is a resident of La Porte, Texas.

7. Defendant, WELLS FARGO BANK, NATIONAL ASSOCIATION is a corporation authorized to do business in the state of Texas and process may be served by mail or in person on its registered agent, Corporation Service Company, 211 E. 7th St, Suite 620, Austin, TX, 78701.

8. Defendant, WELLS FARGO BANK TEXAS NATIONAL ASSOCIATION, is a corporation authorized to do business in the state of Texas and process may be served by mail or in person on its registered agent, Sue Shelburne, 12941 I-45 North, Houston, TX 77060.

9. Defendant, WELLS FARGO BANK (TEXAS) N A, is a corporation authorized to do business in the state of Texas and process may be served by mail or in person on its registered agent, Lloyd Rinehart, 1500 Broadway, Lubbock, TX, 79408.

10. Defendant, WELLS FARGO & COMPANY, is a corporation authorized to do business in the state of Texas and process may be served by mail or in person on its registered agent.

## VENUE

11. Venue is appropriate in the United States District Court for the Southern District of Texas, Galveston Division, in that the Defendant can be said to reside and/or do business in this district as required under 28 U.S.C. § 1391.

## JURISDICTION

12. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) under Title VII, as amended, and under 42 U.S.C. § 1981, for employment discrimination on the basis of race.

13. The unlawful employment practices were committed within the jurisdiction of this Court.

## PROCEDURAL REQUISITES

14. All conditions precedent to the filing of this action have been met by Plaintiff in that she has filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC") and has received a right-to-sue letter from said agency to pursue her claims.

15. Plaintiff filed a Charge of Discrimination against Defendant with the EEOC on or about March 28, 2016.

16. On April 21, 2016 Plaintiff was issued a Notice of Right to Sue letter from the EEOC entitling her to file suit on her claims of discrimination based on race.

17. The filing of this lawsuit has been accomplished within ninety (90) days of Plaintiff's receipt of notice from the EEOC.

## FACTS

18. Plaintiff began working for Defendants in June 2015 at a Wells Fargo location in Seabrook, TX. She transferred to a branch in La Porte, TX in September 2015. When she

was terminated by Defendants on December 19, 2015, her job title was lead teller. Plaintiff was fully qualified to do her job and never had any performance issues.

19. Plaintiff is African-American.

20. Plaintiff's primary supervisor was Jodie Havens, Branch Manager of Defendant. Havens is white.

21. Plaintiff's other supervisor was Rosemary Nungaray, Assistant Branch Manager. Nungaray is white or Hispanic.

22. Plaintiff was regularly intimidated and criticized, in front of other employees and customers by Havens and Nungaray, who would make comments like, "I don't understand why your previous managers gave you the lead title…You don't deserve it." This was said in front of Plaintiff's other coworkers on many occasions and because of Plaintiff's race.

23. Nungaray and Havens would also warn customers at the bank to watch out for Plaintiff because (as a young, black woman) she was flirtatious.

24. Plaintiff complained about race discrimination to Human Resources at Defendants for the first time in October. The HR representative stated that they would follow up with it and get back to Plaintiff but nothing ever happened.

25. After that point, the race-based harassment only got worse and she was referred to by Nungaray as a "black whore" around Thanksgiving in November 2015.

26. In December 2015, Nungaray put her hand up Plaintiff's skirt to try and "prove" that her skirt was too short and made inappropriate comments about Plaintiff's black breasts being fake.

27. After this incident, Plaintiff was sent home to change (even though her outfit was not violating dress code). Thereafter, again, Plaintiff called and complained to Human Resources about the harassment because of her race.

28. Havens would make statements like: "Ew! Leave something to the imagination. Nobody wants to see all of that." This was despite Plaintiff dressing appropriately for work and solely because of her race.

29. Additionally, Plaintiff was purposefully excluded from team meetings and activities, had her supervisors take credit for her work and sabotage her work, and had some of her leadership responsibility taken away from her, solely due to her race, and not due to any performance issues.

30. Plaintiff was also singled out during group meetings for disciplinary action and coaching, while her non-black peers were not, throughout November and December 2015. During their morning huddles, at her La Porte, Texas branch, Plaintiff would be used as an example of what not to do or what not to wear.

31. Plaintiff was regularly compared to Purnima Brooks, a former employee of Defendants, who was also African-American. Nungaray would state, "I've had more problems with you than the other black girl that was here. I want the other one back." Nungaray and Paula Crandall (Drive-thru service manager) would make comments such as: "Purnima was a beautiful black girl too. She had the full figured body, you normally see on young black girls like you…I don't think she knew she was pretty and she was dark too. Purnima didn't rub it into people's faces like you."

32. Plaintiff's skin color was compared to that of the previous black employee's, Purnima Brooks, as being lighter than Purnima's skin color. Also, Plaintiff was harassed by being

asked whether her hair was fake since she had a lot of hair and Purnima Brooks apparently used to wear fake hair.

33. Gloria Chamberlin, Drive-Thru Teller, yelled at Plaintiff and called her incompetent and incapable without any justification, other than the fact that Chamberlin felt she was working "too slow", in late November. When Plaintiff reported it to Nungaray, Plaintiff was punished by not being allowed to work at the Drive-Thru, all because of Nungaray's race discrimination which was condoned by Defendants.

34. Paula Crandall, at the La Porte branch of Defendants, would comment that "the other black girl was better. Why are you so much different from her, attitude wise? Calynn, you speak like a white girl." In addition, Crandall would yell and scream at Plaintiff when she was working in the drive-thru and call her stupid for minor miscommunications. Plaintiff complained to Defendants about this, all to no avail.

35. Whenever Plaintiff attempted to report the inappropriate comments or yelling by her superiors to the branch manager, Jodie Havens, she was simply told that if she was being yelled at, or picked on, there must have been a good reason for it.

36. Plaintiff often reported these racist incidents to Human Resources in the last quarter of 2015, but found that the conditions only got worse after every report.

37. On or about December 12, 2015, Defendants discovered that $30,000 was missing at their La Porte branch and of course blamed it on Plaintiff, since she was the only black employee at the branch. Defendant reported Plaintiff to the police who came to the bank to investigate. Plaintiff was interrogated two or three times, humiliated, forced to take her clothes off for a search, and her belongings were searched. Plaintiff was the only person investigated for this incident solely because of her race.

38. Plaintiff was also interrogated by an investigator at Defendants and forced to stay after work for four hours on December 12, 2015 due to this incident. Plaintiff was told that she was seen on camera taking the money to try and force a confession out of her. Plaintiff was then placed on paid leave until she was terminated on December 19, 2015 by Havens and Nungaray. Since there was no evidence of Plaintiff's involvement in the missing money, and since Plaintiff had absolutely nothing to do with the missing money, no criminal charges were ever brought against her.

39. Plaintiff's supervisors worked together to create a hostile work environment for Plaintiff but did not do so for similarly situated, non-black employees such as Sara Garcia (Hispanic) and Ashley (white), full-time tellers, nor for any of the other non-black employees at the La Porte branch.

## COUNT I

## DISCRIMINATION ON THE BASIS OF RACE UNDER TITLE VII

40. Plaintiff re-alleges and incorporates into count one, paragraphs 21-39.

41. Defendants, by and through their agents and employees, especially Jodie Havens, Rosemary Nungaray, and Paula Crandall, intentionally engaged in the aforementioned practices, policies, customs and usages made unlawful by Title VII, as amended, and directly discriminated against Plaintiff because of her race.

42. Defendants, by and through their agents, have maintained a policy of race discrimination in violation of the foregoing statute against Plaintiff.

43. If Plaintiff was not African-American, she would not have been harassed and treated poorly, and therefore would not have complained, thereby avoiding the retaliatory discharge.

## COUNT II

### TERMINATION ON THE BASIS OF RETALIATION UNDER TITLE VII

44. Plaintiff re-alleges and incorporates into count two, paragraphs 24-25, 34-36, 38.

45. Defendants, by and through their agents and employees, intentionally engaged in the aforementioned practices, policies, customs and usages made unlawful by Title VII, as amended.

46. Based on Plaintiff's complaints to Human Resources and Jodie Havens about race discrimination, she was retaliated against by being harassed and then terminated.

47. Had Plaintiff not complained about race discrimination, Defendants would not have retaliated as described above.

## COUNT III

### DISCRIMINATION ON THE BASIS OF RACE UNDER 42 USC §1981

48. Plaintiff re-alleges and incorporates into count three, paragraphs 21-39.

49. Defendants, by and through their agents and employees, intentionally engaged in the aforementioned practices, policies, customs and usages made unlawful by 42 USC §1981, as amended.

50. Defendants, by and through their agents, has maintained a policy of race discrimination, as part of the terms and conditions of Plaintiff's employment contract with Defendant, in violation of the foregoing statute against Plaintiff.

51. If Plaintiff was not black, she would not have been terminated.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

52. Plaintiff re-alleges and incorporates into count four, paragraphs 22, 25-26, 33-34, 37-38.

53. Defendants, by and through their agents and employees, especially Jodie Havens, Rosemary Nungaray, and Paula Crandall, intentionally inflicted emotional distress upon Plaintiff by acting in an extreme and outrageous manner towards Plaintiff and causing her severe emotional distress.

## DAMAGES

54. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of wages, both in the past, present, and future, as well as compensatory damages, including but not limited to emotional distress.

## EXEMPLARY DAMAGES

55. Defendants' actions were intentional, willful, harsh, oppressive, reckless and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain and suffering. The wrongs done by the Defendants were aggravated by their willfulness, wantonness and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendants from such conduct in similar situations.

## ATTORNEY'S FEES

56. Defendant's actions and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining the services of COANE and ASSOCIATES, PLLC, in order to initiate this proceeding. Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## JURY DEMAND

57. Plaintiff hereby makes his request for a jury trial.

## INJUNCTIVE RELIEF

58. Plaintiff seeks injunctive relief requiring Defendants to take affirmative and effective steps to remove and otherwise discipline managers who have failed to comply with Title VII.

59. Plaintiff especially seeks a mandatory injunction ordering Defendants to reinstate Plaintiff to her job.

60. Plaintiff seeks injunctive relief requiring Defendants to take specific actions designed, implemented, and confirmed by qualified non-government consultants to ensure that all supervisory employees are adequately trained to identify, investigate, and stop situations and complaints. Such specific actions include, but are not limited to:

   a. allocation of significant funding and trained staff to implement all changes within two years;

   b. discipline managers who have violated the company's policies and failed to meet their legal responsibility to promptly investigate complaints and to take effective action to stop and deter prohibited personnel practices against employees;

   c. establishing and strictly measuring EEO compliance as a critical element in every manager's performance standards;

   d. creating a process for the prompt investigation of harassment and reprisal complaints separate from the agency's process;

e. mandatory and effective training for all employees and managers on discrimination and retaliation issues, investigations and appropriate corrective actions;

f. eliminating the backlog of current EEO cases alleging discrimination, harassment and reprisal; and

g. reinstating Plaintiff to her position.

## PRAYER

61. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited to appear and answer, and that on final hearing of this cause, Plaintiff has the following relief:

a. Back Pay;

b. Pre-Judgment Interest on Back Pay;

c. Front Pay;

d. Compensatory Damages, including but not limited to emotional distress;

e. Punitive Damages;

f. Injunctive and Affirmative Relief;

g. Attorney's Fees and Costs;

h. Pain and suffering;

i. Liquidated damages;

j. Such other and further relief, at law or in equity, general or special, to which Plaintiff may show he is justly entitled.

Respectfully submitted,

*/s/ Ballari Mukherjee*

**COANE AND ASSOCIATES, PLLC**

Ballari Mukherjee, S.D. Tex. #2734321
TX Bar #24090283
Email: ballari@coane.com
Bruce A. Coane, S.D. Tex. #7205
TX Bar #04423600
Email: bruce.coane@gmail.com
Coane and Associates, PLLC
5177 Richmond Ave., Suite 770
Houston, TX 77056
Telephone: 713-850-0066
Facsimile: 713-850-8528

*ATTORNEYS FOR PLAINTIFF*